UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JORGE RODRIGUEZ,

    Plaintiff,

        v.                                            No. 3:16-cv-1010(WIG)

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

This is an administrative appeal following the denial of the plaintiff, Jorge Rodriguez's, application for Title II disability insurance benefits ("DIB"). It is brought pursuant to 42 U.S.C. § 405(g).[1]

Plaintiff now moves for an order reversing the decision of the Commissioner of the Social Security Administration (the "Commissioner"), or in the alternative, an order remanding his case for a rehearing. [Doc. # 16]. The Commissioner, in turn, has moved for an order

---

[1] Under the Social Security Act, the "Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under [the Act]." 42 U.S.C. §§ 405(b)(1) and 1383(c)(1)(A). The Commissioner's authority to make such findings and decisions is delegated to administrative law judges ("ALJs"). *See* 20 C.F.R. § 404.929. Claimants can in turn appeal an ALJ's decision to the Social Security Appeals Council. *See* 20 C.F.R. § 404.967. If the appeals council declines review or affirms the ALJ opinion, the claimant may appeal to the United States district court. Section 205(g) of the Social Security Act provides that "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C § 405(g).

affirming her decision. [Doc. # 17]. For the reasons that follow, the Commissioner's decision is affirmed.

## LEGAL STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the district court may not make a *de novo* determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Id.*; *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to first ascertain whether the Commissioner applied the correct legal principles in reaching her conclusion, and then whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). Therefore, absent legal error, a decision of the Commissioner cannot be set aside if it is supported by substantial evidence. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982).

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." *Williams*, 859 F.2d at 258.

## BACKGROUND

**a. Facts**

Plaintiff filed his DIB application on March 18, 2013, alleging a disability onset date of November 30, 2006. His date last insured is December 31, 2011.[2] Plaintiff's claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff appeared and testified at a hearing before administrative law judge Sharda Singh (the "ALJ") on February 25, 2015. On April 22, 2015, the ALJ issued a decision denying Plaintiff's claims. The Appeals Council denied review of the ALJ's decision, making it the final decision of the Commissioner. This action followed.

Plaintiff was forty-four years old on the date his DIB application was filed. He has a high school education and has completed training to be a nurse's aide. Plaintiff has past work experience as a delivery driver and as a nurse's aide. In 2006, Plaintiff suffered a work-related back injury for which he had two surgeries. Plaintiff has not worked since this injury. In accordance with the Court's scheduling order, the parties stipulated to Plaintiff's medical background as presented in the brief accompanying Plaintiff's motion. [Doc. # 16]. The Court adopts these facts and incorporates them by reference herein.

**b. The ALJ's Decision**

---

[2] A claimant is not entitled to benefits unless he or she became disabled prior to the date last insured. *Mauro v. Berryhill*, 270 F. Supp. 3d 754, --- (S.D.N.Y. 2017). Accordingly, the period relevant to analyzing Plaintiff's claim is from November 30, 2006 through December 31, 2011.

The ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity from the alleged onset date through the date last insured. (R. 25). At Step Two, the ALJ found Plaintiff's lower back surgery to be a severe impairment. (R. 25). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 25-26). Next, the ALJ determined Plaintiff retains the following residual functional capacity[3]:

> Plaintiff can perform sedentary work except he can never climb ladders, ropes, or scaffolds; can occasionally climb ramps and stairs; can occasionally balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to vibrations, hazards, and extreme cold or heat.

(R. 26-31). At Step Four, the ALJ found that through the date last insured, Plaintiff was unable to perform his past work. (R. 31). Finally, at Step Five, the ALJ relied on the testimony of the Vocational Expert ("VE") to find that there were jobs existing in significant numbers in the national economy during the relevant period that Plaintiff could have performed. (R. 31-32). Specifically, the VE testified that Plaintiff could have performed the positions of document preparer, order clerk, and surveillance system monitor. (R. 32). Accordingly, the ALJ found Plaintiff not to be disabled.

## DISCUSSION

The Social Security Act defines disability as "[an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted for a continuous period of not less than 12

---

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite his limitations. 20 C.F.R. § 404.1545(a)(1).

months." 42 U.S.C. § 423(d)(1). In order to determine whether a claimant is disabled, the ALJ must follow the Commissioner's five-step evaluation process.[4]

On appeal, Plaintiff advances several arguments, which the Court will address in turn.

1. **Factual Errors and Mischaracterizations**

Plaintiff first argues that the ALJ made several factual errors in her evaluation of the evidence. Specifically, Plaintiff claims that the ALJ erred in describing his treatment as conservative when he actually had two spinal surgeries, and in stating that he had no muscle atrophy or neurological deficits. The Court has examined the alleged mischaracterizations and rejects Plaintiff's argument; the ALJ accurately and thoroughly described the evidence before her.

The ALJ reasonably described Plaintiff's treatment as conservative with *the exception of* the two back surgeries. (R. 29) (emphasis added). The decision shows that the ALJ was well aware of Plaintiff's surgical history. In fact, the ALJ found the two back surgeries to be a severe impairment. (R. 25). Nevertheless, the ALJ's characterization of the course of treatment as conservative comes directly from the record: an independent medical examination conducted by

---

[4] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment which "meets or equals" an impairment listed in Appendix 1 of the regulations. If so, and it meets the durational requirements, the Commissioner will consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if not, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work in the national economy which the claimant can perform. 20 C.F.R. § 404.1520 (a)(4)(i)-(v). The claimant bears the burden of proof on the first four steps, while the Commissioner bears the burden of proof on this last step. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014).

neurosurgeon Dr. Torrey on November 24, 2008 characterized Plaintiff's treatment as "conservative." (R. 798). There was no mischaracterization.

Likewise, the ALJ accurately described Plaintiff's physical condition. The ALJ observed that, after the second surgery, Plaintiff had no "*significant* neurological findings of impinged nerve root, decreased strength, or muscle atrophy." (R. 26) (emphasis added). This statement is supported by the record. For example, treatment notes indicate Plaintiff had good mobility in the exam room (R. 667), no spondylolysis in the lumbar spine (R. 724), a functional gait (R. 539, 541, 545), no evidence of muscular atrophy (R. 791), and full muscle strength (R. 798).

In all, the Court finds no error with the ALJ's characterization of the evidence.

### 2. Listed Impairments

Plaintiff next argues that he medically equals Listing 1.04. Listing 1.04 requires a spinal disorder resulting in compromise of a nerve root or the spinal cord with

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. § Pt. 404, Subpt. P, App. 1. The burden of proof is on the Plaintiff to present evidence he satisfies the Listing requirements. *See Ruiz v. Apfel*, 26 F.Supp.2d 357, 367 (D. Conn. 1998). "For a claimant to show that [an] impairment matches a listing, it must meet *all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal Listing 1.04. As the ALJ discussed in detail, there is no objective medical evidence indicating compromise of the nerve root or spinal cord. (R. 26). While Plaintiff's argument on this issue relies on treatment notes mentioning lower back pain and limited range of motion, Plaintiff does

not point to medical evidence indicating he meets the specific criteria of Listing 1.04. Accordingly, Plaintiff has not met his burden of proving he satisfies all of the requirements of the Listing.

### 3. The ALJ's Credibility Assessment

Third, Plaintiff argues that the ALJ erred in assessing his credibility because she made no specific findings as to the location, duration, frequency, and intensity of his pain or other symptoms.

When determining a claimant's RFC, the ALJ is required to take into account the claimant's reports of pain and other limitations; the ALJ is not, however, required to accept the claimant's subjective complaints without question. *Taylor v. Astrue,* No. 3:09-cv-1049, 2010 WL 7865031, at *9 (D. Conn. Aug. 31, 2010). Instead, the ALJ must weigh the credibility of the claimant's complaints in light of the other evidence of record. The regulations set forth a two-step process for this evaluation. First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. 20 C.F.R. § 404.1529. Next, the ALJ must determine "the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence" of record. *Id.*

In this case, the ALJ properly evaluated Plaintiff's subjective complaints. First, she summarized Plaintiff's allegations of pain and limitations. (R. 27). Then, she assessed the credibility of Plaintiff's subjective complaints and weighed them against the medical record. (R. 27-31). Specifically, the ALJ determined she was "unable to conclude the claimant is *completely unable to work* as he alleges, due to significant inconsistencies in the records as a whole and lack of objective findings to support the degree of restriction he alleges…" (R. 27-28) (emphasis in

7

original). The ALJ goes on to discuss the reasons why she found Plaintiff's allegations to not be fully credible: they were not supported by the objective medical findings; the course of treatment had been somewhat conservative, which is inconsistent with the level of pain alleged; and Plaintiff's activities of daily living are inconsistent with a claim of total disability. (R. 28).

The ALJ's assessment of Plaintiff's credibility is supported by substantial evidence. As the ALJ noted, objective medical testing after the two surgeries revealed no significant abnormalities: an MRI of the lumbar spine showed no evidence of disc herniation or of central or neuroforaminal stenosis. (R. 809). Another MRI showed no focal osseous abnormality. (R. 827).

The ALJ also highlighted largely normal exam findings, including no focal motor deficits or muscular atrophy (R. 791); intact sensation, negative straight leg raises, and full muscle strength (R. 798); functional gait (R. 539, 541, 545); and no neurological deficits (R. 539, 549).

Further, the ALJ discussed the relatively conservative course of treatment, which is inconsistent with the severity of symptoms Plaintiff alleged. The ALJ additionally discussed Plaintiff's activities of daily living, and concluded they were inconsistent with his allegations of disability. Of note, Plaintiff testified he was able to do chores around the house, remove ice from outside stairs, use his pool, walk around his yard, and shop for groceries. (R. 61, 64, 69).

It is the function of the Commissioner, and not the reviewing court, to appraise the claimant's credibility. *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'" *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (citing *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th Cir.1994)). There is no such unreasonableness here. \

### 4. The RFC Finding

Plaintiff also maintains that the RFC is not supported by substantial evidence. Specifically, he avers that the RFC should have included a sit/stand option and a limitation for use of a cane to ambulate and for stability. Since Plaintiff has not pointed to any objective medical evidence to support that these limitations were required, or has pointed to evidence sufficient for the Court to find that the assessed RFC was in error, this argument must be rejected.

Further, the Court finds that the RFC accurately accounts for Plaintiff's limitations. The ALJ found that Plaintiff was capable of sedentary work with some modifications. Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

The medical and opinion evidence supports the RFC. Dr. Duffy, Plaintiff's treating orthopedic, repeatedly noted that Plaintiff was capable of light duty work during the relevant period. *See* R. 540-47. Other examining physicians found Plaintiff capable at least sedentary work. For example, on November 8, 2007, Dr. Kime noted that Plaintiff was capable of light duty work. (R. 795). On March 2, 2011, Dr. Struznicky stated Plaintiff was capable of returning to his previous work with no lifting over 10 pounds and no bending. (R. 550). The RFC is also supported by the medical evidence discussed above.[5]

---

[5] Plaintiff also posits that the ALJ should have found him disabled as of 2006, and then evaluated the case to determine if medical improvements had occurred. Since, as set forth above, the RFC assessed for the relevant period is supported by substantial evidence, Plaintiff's argument that he should have been found disabled for a portion of that relevant period cannot prevail.

In all, a reasonable fact finder could have weighed the evidence as the ALJ did here. *See McIntyre v. Colvin*, 758 F.3d at 149 ("If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.").

5. **The ALJ's Step Five Finding**

Finally, Plaintiff argues that the ALJ erred at the fifth step of the evaluation process. Specifically, he maintains that none of the jobs the VE said Plaintiff could perform exist in significant numbers.[6]

At Step Five, the Commissioner must show the existence of work in the national economy that a claimant can perform. 20 C.F.R. § 404.1512(b)(3). To satisfy this burden, "[a]n ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion, and [the hypotheticals] accurately reflect the limitations and capabilities of the claimant involved." *McIntyre v. Colvin*, 758 F.3d at 151 (internal quotation marks and citations omitted).

Here, the VE testified that a person with the assessed RFC could perform the following positions: document preparer (97,000 jobs nationally); order clerk (25,000 jobs nationally); and surveillance system monitor (16,500 jobs nationally). (R. 32). In his motion, Plaintiff challenges the document preparer job, summarily arguing that it is obsolete. He also argues that surveillance system monitor position does not exist in significant numbers nationally. Even if the Court were to accept Plaintiff's argument on these two positions, the Commissioner's Step

---

[6] Plaintiff also argues that the ALJ cherry-picked the VE's testimony by ignoring when the VE said there would be no jobs available to Plaintiff if he were to require a 15 minute break every hour. This argument must be rejected. Since the RFC is supported by substantial evidence, there is no basis for this Court to conclude that Plaintiff required a 15 minute break every hour. Thus, any testimony as to this hypothetical limitation is irrelevant.

Five finding still must be upheld. To meet her burden at step five, "the Commissioner need show only *one job* existing in the *national economy* that [claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) (emphasis added).[7] The order clerk job has 25,000 positions available nationally. This is enough to satisfy the Commissioner's burden. *See Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) (noting that courts have held that a "significant number" of jobs is "fairly minimal.") (citing cases).

## **Conclusion**

After a thorough review of the record and consideration of all of the argument Plaintiff has raised, the Court finds that the ALJ did not commit legal error and that her opinion is supported by substantial evidence. Accordingly, the Court grants Defendant's Motion to Affirm and denies Plaintiff's Motion to Reverse.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  5th  day of February, 2018, at Bridgeport, Connecticut.

 */s/ William I. Garfinkel*
WILLIAM I. GARFINKEL
United States Magistrate Judge

---

[7] Thus, the Court rejects Plaintiff's position that the ALJ is required to show that jobs exist in significant numbers in Connecticut. As the Second Circuit makes clear, the Commissioner can meet her burden at Step Five by showing jobs existing at the national level. *See id.*

11